**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff Gina Henry*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GINA HENRY, *derivatively on behalf of* UNICYCIVE THERAPEUTICS, INC.,<br><br>Plaintiff,<br><br>*v.*<br><br>SHALABH GUPTA, SANDEEP LAUMAS, GAURAV AGGARWAL, SARA KENKARE-MITRA and JOHN TOWNSEND,<br><br>Defendants,<br><br>*and*<br><br>UNICYCIVE THERAPEUTICS, INC.,<br><br>Nominal Defendant. | Case No.<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Gina Henry ("Plaintiff"), by and through her undersigned attorneys, brings this Verified Shareholder Derivative Complaint, for the benefit of Nominal Defendant Unicycive Therapeutics, Inc. ("Unicycive" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers, to remedy the Individual Defendants' (defined below)

breaches of fiduciary duties, unjust enrichment, gross mismanagement, waste of corporate assets, and violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

Plaintiff's allegations are based upon personal knowledge as to herself and her own acts, and upon information and belief, based on the investigation of Plaintiff's counsel, including a review of publicly available information, filings by Unicycive with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a shareholder derivative action brought on behalf of Unicycive against certain of its current and former officers and directors for breaches of fiduciary duty, violations of federal law, and other misconduct that have caused substantial harm to the Company.

2. Unicycive is a clinical-stage biotechnology company that develops and commercializes therapies for the U.S market. Among its key product candidates is oxylanthanum carbonate ("OLC"), a purported next-generation phosphate binder for the treatment of hyperphosphatemia in chronic kidney disease ("CKD") patients on dialysis.

3. Unicycive's senior executives and directors touted the Company's readiness and ability to satisfy the U.S. Food and Drug Administration's ("FDA") manufacturing compliance requirements and the likelihood of approval of its New Drug Application ("NDA") for OLC. In truth, however, Unicycive's manufacturing readiness was materially overstated. The Company's contract development and manufacturing organization ("CDMO") relied on a third-party subcontractor that suffered from significant deficiencies in current good manufacturing practice ("cGMP") compliance, which Unicycive's leadership failed to identify, prevent, or disclose.

4. The Individual Defendants' misconduct was initially revealed beginning on June 10, 2025, when Unicycive announced that the FDA had identified cGMP deficiencies at the subcontractor facility, precluding further label discussions for OLC.

5. On this news, Unicycive's stock price fell declined $3.68 per share, or 40.89%, to close at $5.32 per share on June 10, 2025.

6. Then, on June 30, 2025, the Company disclosed that the FDA had issued a Complete Response Letter ("CRL") for the OLC NDA, again citing those same manufacturing deficiencies.

7. On this news, Unicycive's stock price fell $2.03 per share, or 29.85%, to close at $4.77 per share on June 30, 2025.

8. As a result of the foregoing, a securities class action was filed in this Court against the Company, captioned *Elkhodari v. Unicycive Therapeutics, Inc., et al.,* Case No. 3:25-cv-06923 (N.D. Cal.) (the "Securities Class Action").

9. These revelations demonstrate that Unicycive's senior leadership failed to implement and maintain adequate internal controls and compliance systems to ensure regulatory integrity, accurate public disclosures, and proper oversight of the Company's manufacturing vendors.

10. As a result of this misconduct, Unicycive has suffered significant harm, including loss of market capitalization, exposure to federal securities litigation, regulatory scrutiny, reputational damage, and substantial costs associated with remediation and defending the Securities Class Action.

11. Through this action, Plaintiff seeks to hold the Company's officers and directors accountable for the harm their breaches of fiduciary duty and other violations have inflicted on Unicycive, and to obtain appropriate corporate governance reforms to prevent the recurrence of such wrongdoing.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)) and Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9).

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

14. This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

15. This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contact with this District to render the exercise of jurisdiction by the courts of this District permissible under traditional notions of fair play and substantial justice.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because i) the Company maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the Individual Defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to the Company, occurred in this District; and (iv) the Individual Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

### Plaintiff

17. Plaintiff is a current shareholder of Unicycive and has continuously held Unicycive stock at all relevant times.

18. Plaintiff will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

### The Company

19. Nominal Defendant Unicycive is a Delaware corporation headquartered at 4300 El Camino Real, Suite 210, Los Alto, California 94022. Unicycive's common stock trades in an efficient market on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "UNCY."

**Director Defendants**

20. Defendant Shalabh Gupta ("Gupta") has served as Unicycive's Chief Executive Officer ("CEO") at all relevant times. Defendant Gupta is also the Company's founder and Chairman of its Board of Directors ("Board"). Upon information and belief, Defendant Gupta is a citizen of the state of California.

21. Defendant Sandeep Laumas ("Laumas") has served as a director of the Company at all relevant times. Defendant Laumas also serves as chair of the Audit Committee and as a member of the Compensation Committee and Nominating and Corporate Governance Committee. Upon information and belief, Defendant Laumas is a citizen of the state of Connecticut.

22. Defendant Gaurav Aggarwal ("Aggarwal") has served as a director of the Company at all relevant times. Defendant Aggarwal also serves as chair of the Compensation Committee and as a member of the Audit Committee and Nominating and Corporate Governance Committee.

23. Upon information and belief, Defendant Aggarwal is a citizen of the state of California.

24. Defendant Sara Kenkare-Mitra ("Kenkare-Mitra") has served as director of the Company at all relevant times. Defendant Kenkare-Mitra also serves as chair of the Nominating and Corporate Governance Committee and as a member of the Audit Committee and the Compensation Committee. Upon information and belief, Defendant Kenkare-Mitra is a citizen of the state of California.

25. The above-named defendants are collectively referred to herein as the "Director Defendants."

**Officer Defendants**

26. Defendant John Townsend ("Townsend") has served as Unicycive's Chief Financial Officer at all relevant times. Upon information and belief, Defendant Townsend is a citizen of the state of California.

27. Defendant Townsend together with Defendant Gupta are collectively referred to herein as the "Officer Defendants."

28. The Director Defendants and Officer Defendants are collectively referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**BACKGROUND**

29. Unicycive is a clinical-stage biotechnology company that identifies, develops, and commercializes therapies to address unmet medical needs in the U.S. The Company is developing, among other therapies, oxylanthanum carbonate ("OLC"), a purported next-generation phosphate binder for the treatment of hyperphosphatemia in chronic kidney disease ("CKD") patients on dialysis.

30. At all relevant times, Defendants consistently touted the prospects of an NDA for OLC for the treatment of hyperphosphatemia in CKD patients on dialysis, assuring investors and analysts of the Company's readiness and ability to satisfy the FDA's, inter alia, manufacturing compliance requirements.

**MATERIALLY FALSE AND MISLEADING STATEMENTS**

31. On March 28, 2024, during aftermarket hours, Unicycive issued a press release announcing its full year ("FY") 2023 financial results and business updates. The press release quoted Defendant Gupta as stating:

> The completion of enrollment in our pivotal OLC clinical trial was a critical achievement as we believe the novel characteristics of [OLC] will show its potential as a best-in-class product to treat hyperphosphatemia for patients with [CKD] on dialysis. Positive results from the trial will provide the basis to file a[n NDA] with the [FDA], and we remain on track with topline data expected from the trial towards the latter part of the second quarter of this year and plan to file the NDA shortly thereafter.

32. The same day, also during after-market hours, Unicycive filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its FY

ended December 31, 2023 (the "2023 10-K"). The 2023 10-K was reviewed and signed by each of the Individual Defendants.

33. The 2023 10-K provided generic, boilerplate representations regarding risks related to "noncompliance with regulatory standards and requirements," including cGMP-related requirements, while stating that the Company has "manufacturing standards . . . established" and "[e]xecutive management . . . [with] considerable product launch experience" and "expertise in the biopharmaceutical industry," thereby downplaying these risks.

34. The 2023 10-K also stated that "[w]e plan to continue to use third-party service providers, including contract manufacturing organizations, . . . to manufacture and supply the materials to be used during the development and commercialization of our product candidates[,]" thereby indicating the sufficiency of those third-party service providers for manufacturing purposes.

35. Appended as exhibits to the 2023 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Officer Defendants certified, in relevant part, that the 2023 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

36. On April 26, 2024, the Company issued its 2024 Proxy Statement on Schedule 14A with the SEC. The 2024 Proxy Statement solicited shareholder approval for, among other things, the re-election of the Director Defendants to the Board. The 2024 Proxy Statement stated the following regarding the Board:

> **<u>Board's Role in Risk Oversight</u>**
> Our Board of Directors believes that open communication between management and the Board of Directors is essential for effective risk management and oversight. Our Board of Directors meets with our Chief Executive Officer and other members of the senior management team at quarterly Board of Director meetings, where, among other topics, they discuss strategy and risks in the context of reports from the management team and evaluate the risks inherent in significant transactions. While our Board of Directors is ultimately responsible for risk oversight, our Board committees assist the Board of Directors in fulfilling its oversight responsibilities in certain areas of risk. The Audit Committee assists our Board of Directors in

> fulfilling its oversight responsibilities with respect to risk management in the areas of major financial risk exposures, internal control over financial reporting, disclosure controls and procedures, legal and regulatory compliance and cybersecurity and data privacy. The Compensation Committee assists our Board of Directors in assessing risks created by the incentives inherent in our compensation policies. The Nominating and Governance Committee assists our Board of Directors in fulfilling its oversight responsibilities with respect to the management of corporate, legal and regulatory risk.

37. Despite this assurance, the Board was not in fact fulfilling its oversight responsibilities as, contrary to the Director Defendants' representations: (i) Unicycive's readiness and ability to satisfy the FDA's manufacturing compliance requirements was overstated; and (ii) the OLC NDA's regulatory prospects were likewise overstated. Thus, it was known, or should have been known, to the Director Defendants in the exercise of prudent business judgment that the Board was not exercising adequate risk oversight. As such, the foregoing statement in the 2024 Proxy Statement was a half-truth, meaning that the Director Defendants were required to (yet failed to) include all additional information necessary to make the statement not misleading. See 17 C.F.R. § 240.12b-20.

38. Had shareholders been aware of the true facts, then it may have impacted how they voted on the proposals in the 2024 Proxy Statement, including whether to re-elect the Director Defendants to the Board. Accordingly, the representations and omissions rendering the 2024 Proxy Statement false and misleading were material to investors.

39. On the basis of the foregoing false and misleading statements in the 2024 Proxy Statement, shareholders voted in favor of, inter alia, the reelection of the Director Defendants to the Board, thereby enabling them to continue breaching their fiduciary duties to the Company as alleged herein, which led to the Company suffering harm.

40. On May 13, 2024, Unicycive filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for its first quarter ended March 31, 2024 (the "1Q24 10-Q"). The 1Q24 10-Q contained the same statements as referenced above, indicating the sufficiency of Unicycive's third-party service providers for manufacturing purposes.

41. Appended as exhibits to the 1Q24 10-Q were substantively the same SOX certifications as referenced above, signed by the Officer Defendants.

42. On June 25, 2024, Unicycive hosted a conference call with analysts and investors to discuss purported positive results from a clinical trial evaluating OLC, which the Company planned to submit as part of the OLC NDA. During the call, a Brookline Capital Markets analyst asked, "in terms of manufacturing, where do you stand and what are the next steps in terms of buildout of the commercial team?" In response, Defendant Gupta stated, in relevant part:

> With regard to manufacturing, we are very, very much ready and have tested, validated batches at multi hundreds of kilograms level. So we are ready, we are scaling up our manufacturing process. There is no problem. We are ready to launch mid next year. So from manufacturing part, we have been working on these years to be able to scale up.

43. On August 14, 2024, Unicycive issued a press release announcing its second quarter 2024 financial results and business updates. The press release quoted Defendant Gupta as stating:

> Achieving successful results from our [OLC] pivotal trial was a significant milestone for the company and brings us one step closer to becoming a commercial organization . . . . [W]e believe that we have completed all the necessary requirements from this pivotal clinical trial to fulfill the FDA's requests. We remain on track to submit our NDA by the end of this month, and we maintain a high degree of confidence in the potential for OLC to be a best-in-class commercial product, if approved.

44. The same day, Unicycive filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for its second quarter ended June 30, 2024 (the "2Q24 10-Q"). The 2Q24 10-Q contained the same statements as referenced above, indicating the sufficiency of Unicycive's third-party service providers for manufacturing purposes.

45. Appended as exhibits to the 2Q24 10-Q were substantively the same SOX certifications as referenced above, signed by the Officer Defendants.

46. On September 3, 2024, Unicycive issued a press release announcing that it had submitted the OLC NDA to the FDA. The press release stated that "specifications and practices related to chemistry, manufacturing and controls" supported the OLC NDA package, and quoted Defendant Gupta as stating:

> We believe our data support a differentiated and best-in-class therapy that will maintain phosphate control while reducing the onerous pill burden patients currently have to manage. Over the last several months, our team has worked diligently to reach this milestone, and we are now preparing to launch OLC, if approved.

47. On November 11, 2024, Unicycive issued a press release touting that "the [FDA] has accepted the [NDA] for [OLC] and has set a Prescription Drug User Fee Act (PDUFA) target action date of June 28, 2025." This press release, too, stated that "chemistry, manufacturing and controls (CMC) data" supported the OLC NDA package, and quoted Defendant Gupta as stating:

> We are thrilled with the FDA acceptance of our first NDA, a significant milestone towards our efforts to bring this important treatment option to patients with kidney disease if approved . . . . With our NDA now under review, we are preparing to commercialize and launch OLC in the second half of 2025, if approved.

48. On November 13, 2024, Unicycive issued a press release announcing its third quarter 2024 financial results and business updates. The press release quoted Defendant Gupta as stating:

> We are pleased with the tremendous progress we have made over the last several months highlighted by the acceptance of our [OLC NDA] which may result in the potential approval of our first drug in 2025 . . . . With the NDA acceptance now behind us, we are actively preparing to commercialize OLC with the goal of bringing this innovative new treatment to market in the second half of 2025.

49. The same day, Unicycive filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for its third quarter ended September 30, 2024 (the "3Q24 10-Q"). The 3Q24 10-Q contained the same statements as referenced above,

indicating the sufficiency of Unicycive's third-party service providers for manufacturing purposes.

50. Appended as exhibits to the 3Q24 10-Q were substantively the same SOX certifications as referenced above, signed by the Officer Defendants.

51. On March 31, 2025, Unicycive issued a press release announcing its FY 2024 financial results and business updates. The press release quoted Defendant Gupta as stating: "2025 is positioned to be a transformational year for Unicycive, with the near-term potential for FDA approval and commercial launch of [OLC] We continue to actively prepare to launch OLC, including . . . preparing our commercial infrastructure to rapidly make OLC available to patients upon approval."

52. The same day, Unicycive filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its FY ended December 31, 2024 (the "2024 10-K"). The 2024 10-K was reviewed and signed by each of the Individual Defendants.

53. The 2024 10-K continued to provide generic, boilerplate representations regarding risks related to "noncompliance with regulatory standards and requirements," including cGMPrelated requirements, while stating that the Company has "manufacturing standards . . . established" and "[e]xecutive management . . . [with] considerable product launch experience" and "expertise in the biopharmaceutical industry," thereby downplaying these risks.

54. In addition, the 2024 10-K contained the same statements as referenced above, indicating the sufficiency of Unicycive's third-party service providers for manufacturing purposes.

55. The 2024 10-K also stated that "chemistry, manufacturing and controls (CMC) data" supported the OLC NDA package.

56. Appended as exhibits to the 2024 10-K were substantively the same SOX certifications as referenced above, signed by the Officer Defendants.

57. On May 14, 2025, Unicycive issued a press release announcing its first quarter 2025 financial results and business updates. The press release quoted Defendant Gupta as stating, in relevant part:

> We are making incredible strides as we prepare for the potential FDA approval of [OLC] so we can bring this treatment to people with [CKD] on dialysis as efficiently as possible We remain dedicated to bolstering our commercial infrastructure as we strive to deliver a much-needed solution to patients and healthcare providers.

58. The same day, Unicycive filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for its first quarter ended March 31, 2025 (the "1Q25 10-Q"). The 1Q25 10-Q contained the same statements as referenced above, indicating the sufficiency of Unicycive's third-party service providers for manufacturing purposes.

59. Appended as exhibits to the 1Q25 10-Q were substantively the same SOX certifications as referenced above, signed by the Officer Defendants.

60. The statements referenced above were materially false and misleading because the Individual Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, the Individual Defendants made false and/or misleading statements and/or failed to disclose that: (i) Unicycive's readiness and ability to satisfy the FDA's manufacturing compliance requirements was overstated; (ii) the OLC NDA's regulatory prospects were likewise overstated; and (iii) as a result, the Company's and the Individual Defendants' public statements were materially false and misleading at all relevant times.

61. In addition, the Individual Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Unicycive to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." The Individual Defendants failed to disclose, inter alia, Unicycive's true readiness and ability (or lack

thereof) to satisfy the FDA's manufacturing compliance requirements, as well as the OLC NDA's true regulatory prospects. The Individual Defendants' failure to disclose these issues violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

**THE TRUTH FINALLY EMERGES**

62. On June 10, 2025, during pre-market hours, Unicycive issued a press release "announc[ing] an update on its [NDA] for [OLC] to treat hyperphosphatemia in patients with [CKD] on dialysis." The press release stated, in relevant part:

> The FDA communicated to the Company that it had identified deficiencies in cGMP compliance at a third-party manufacturing vendor (one of its CDMO's third-party subcontractors and not its Drug Substance vendor) following an FDA inspection.
>
> The FDA indicated that, given the identified deficiencies, any label discussions between the FDA and the Company are precluded. The Company has responded to all FDA information requests and expects a final decision from the FDA by the PDUFA action date of June 28, 2025.

63. On this news, Unicycive's stock price fell $3.68 per share, or 40.89%, to close at $5.32 per share on June 10, 2025.

64. Then, on June 30, 2025, during pre-market hours, Unicycive issued a press release announcing that the FDA had issued a CRL for the OLC NDA, which "cited deficiencies previously identified at a third-party manufacturing vendor [purportedly] unrelated to [OLC.]" The press release stated, in relevant part:

> [T]he [FDA] has issued a CRL for its [NDA] for OLC to treat hyperphosphatemia in patients with [CKD] on dialysis.
>
> * * *
>
> After submitting the NDA, and as a part of the application review and routine information requests, the FDA notified Unicycive that a third-party manufacturing vendor of its main [CDMO] was cited for deficiencies following a cGMP inspection.

65. On this news, Unicycive's stock price fell $2.03 per share, or 29.85%, to close at $4.77 per share on June 30, 2025.

66. As a result of the Individual Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the Company has suffered significant losses and damage.

## DAMAGES TO UNICYCIVE

**Securities Class Action**

67. On August 15, 2025, a securities class action complaint, captioned *Elkhodari v. Unicycive Therapeutics, Inc., et al.*, Case No. 3:25-cv-06923 (N.D. Cal.), was filed in the United States District Court for the Northern District of California against the Company and the Officer Defendants. The complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5.

68. As a result of the wrongs complained of herein, the Individual Defendants have subjected the Company to the significant cost of defending itself and certain of the Company's officers. The Company will continue to incur significant sums in relation to the Securities Class Action and any liability or settlement that results.

69. Such expenditures include, but are not limited to, legal fees, costs, and any payments for resolution or to satisfy a judgment associated with the Securities Class Action, amounts paid to outside lawyers, accountants, and investigators in connection thereto, and costs incurred from compensation and benefits paid to the Individual Defendants who have breached their duties to Unicycive.

70. Such expenditures will also include costs incurred in any internal investigation pertaining to violations of law, costs incurred in defending any investigations or legal actions taken against the Company due to its violations of law, and payments of any fines or settlement amounts associated with the Company's violations.

71. As a direct and proximate result of the Individual Defendants' conduct, Unicycive has suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's

discount" that will plague the Company's stock in the future due to the Company's actions and misrepresentations and the Individual Defendants' breaches of fiduciary duties. The credibility and motives of management are now in serious doubt.

**Unjust Compensation**

72. At all relevant times, the Company paid lucrative compensation to each of the Individual Defendants. The Company paid the Individual Defendants in connection with their respective roles as officers and/or directors of the Company.

73. Accordingly, as part of their respective roles, the Individual Defendants were required to, among other things, exercise due care and diligence in the management and administration of the affairs of the Company, act ethically and in compliance with all laws and regulations, maintain adequate internal controls, and conduct business in a fair and transparent manner. Further, each of the Individual Defendants had additional duties and responsibilities owed to the Company by virtue of their executive, directorial and/or committee roles, as described supra, for which they were compensated for.

74. However, the Individual Defendants failed to carry out their duties adequately or at all, causing harm to the Company, as alleged herein. Because the Individual Defendants failed to carry out their respective duties, the compensation they received was excessive and undeserved. As such, the Individual Defendants were unjustly enriched to the detriment of the Company.

## <u>THE INDIVIDUAL DEFENDANTS' DUTIES AND RESPONSIBILITIES</u>

**Fiduciary Duties**

75. By reason of their positions as officers, directors, and/or fiduciaries of Unicycive and because of their ability to control the business and corporate affairs of Unicycive, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in the best interests of the Company and its shareholders.

76. Each director and officer of the Company owes to the Company and its

shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's operations, finances, financial condition, and present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

77. The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with the Company, each of the Defendants had access to adverse non-public information about the financial condition, operations, sales and marketing practices, and improper representations of the Company.

78. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a) ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b) conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system

of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d) remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e) ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f) ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

79. Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

**Corporate Code of Conduct**

80. At all relevant times, the Company had in place its Code of Business Conduct and Ethics ("Code of Conduct") which covers "officers and, as applicable, directors" of the Company.

81. In a section entitled "Honest and Ethical Conduct," the Code of Conduct states:

> It is the policy of the Company to promote high standards of integrity by conducting our affairs in an honest and ethical manner. The integrity and reputation of the Company depends on the honesty, fairness and integrity brought to the job by each person associated with us. Unyielding personal integrity is the foundation of corporate integrity.

82. In a section entitled "Research and Development; Regulatory Compliance," the Code of Conduct states:

> The research and development of pharmaceutical products is subject to a number of legal and regulatory requirements, including standards related to ethical research procedures and proper scientific conduct. We expect employees to comply with all such requirements.

83. In a section entitled "Maintenance of Corporate Books, Records, Documents and Accounts; Financial Integrity; Public Reporting," the Code of Conduct states:

> The integrity of our records and public disclosure depends upon the validity, accuracy and completeness of the information supporting the entries to our books of account. Therefore, our corporate and business records should be completed accurately and honestly. The making of false or misleading entries, whether they relate to financial results or test results, is strictly prohibited. Our records serve as a basis for managing our business and are important in meeting our obligations to customers, suppliers, creditors, employees and others with whom we do business. As a result, it is important that our books, records and accounts accurately and fairly reflect, in reasonable detail, our assets, liabilities, revenues, costs and expenses, as well as all transactions and changes in assets and liabilities. We require that:
>
> - no entry be made in our books and records that intentionally hides or disguises the nature of any transaction or of any of our liabilities, or misclassifies any transactions as to accounts or accounting periods;
> - transactions be supported by appropriate documentation;
> - the terms of sales and other commercial transactions be reflected accurately in the documentation for those transactions and all such documentation be reflected accurately in our books and records;
> - employees comply with our system of internal controls; and
> - no cash or other assets be maintained for any purpose in any unrecorded or "off-the-books" fund.
>
> Our accounting records are also relied upon to produce reports for our management, stockholders and creditors, as well as governmental agencies. In particular, we rely upon our accounting and other business and corporate records in preparing periodic and current reports that we file with the Securities and Exchange Commission ("SEC"). Securities laws require that these reports provide full, fair, accurate, timely and understandable disclosure and fairly present our financial condition and results of operations. Employees who collect, provide or analyze information for or otherwise contribute in any way in preparing or verifying these reports should strive to ensure that our financial disclosure is accurate and transparent and that our

> reports contain all of the information about the Company that would be important to enable stockholders and potential investors to assess the soundness and risks of our business and finances and the quality and integrity of our accounting and disclosures. In addition:
>
> - no employee may take or authorize any action that would intentionally cause our financial records or financial disclosure to fail to comply with generally accepted accounting principles, the rules and regulations of the SEC or other applicable laws, rules and regulations;
> - all employees must cooperate fully with our Accounting Department, as well as our independent public accountants and counsel, respond to their questions with candor and provide them with complete and accurate information to help ensure that our books and records, as well as our reports filed with the SEC, are accurate and complete; and
> - no employee should knowingly make (or cause or encourage any other person to make) any false or misleading statement in any of our reports filed with the SEC or knowingly omit (or cause or encourage any other person to omit) any information necessary to make the disclosure in any of our reports accurate in all material respects.
>
> Any employee who becomes aware of any departure from these standards has a responsibility to report his or her knowledge promptly to a supervisor, the Compliance Officer, the Audit Committee, or one of the other compliance resources described in Section 17.

**Audit Committee Charter**

84. At all relevant times, the Company had in place its Audit Committee Charter which set forth the additional duties and responsibilities of the Audit Committee. The Audit Committee Charter states that the Committee's purpose "shall be (1) to oversee the Company's accounting and financial reporting processes and the audit of the Company's financial statements and (2) to fulfill the other Committee responsibilities as delegated to the Committee by the Board. To further these purposes, in discharging the responsibilities set forth below, the policy of the Committee shall be to maintain and foster an open avenue of communication among the Committee, the Company's financial management and the Company's independent auditors."

85. In a section entitled "Responsibilities," the Audit Committee Charter states the following:

> [] DISCUSSION OF THE AUDIT. To review and discuss with the Company's independent auditors (a) the independent auditors' responsibilities under generally

accepted auditing standards and the responsibilities of management in the audit process, (b) the overall audit strategy, (c) the scope and timing of the annual audit and (d) any significant risks identified during the independent auditors' risk assessment procedures.

[] AUDIT RESULTS. To review and discuss with management and the Company's independent auditors, the results of the annual audit, including the independent auditors' assessment of the quality, not just acceptability, of the Company's accounting principles and practices, the independent auditors' views about qualitative aspects of the Company's significant accounting practices, the reasonableness of significant judgments and estimates (including material changes in estimates), any material audit adjustments proposed by the independent auditors and any adjustments proposed but not recorded, the adequacy of the disclosures in the financial statements and any other matters required to be communicated to the Committee by the independent auditors under generally accepted auditing standards, including the standards of the PCAOB, as appropriate.

[] ACCOUNTING REPORT. To review and discuss with the Company's independent auditors (a) all critical accounting policies and practices to be used in the audit; (b) all alternative treatments of financial information within generally accepted accounting principles ("GAAP") that have been discussed with management, the ramifications of the use of such alternative treatments and the treatment preferred by the independent auditors; and (c) other material written communications between the independent auditors and management.

[] FINANCIAL STATEMENT ISSUES. To review and discuss with management and the Company's independent auditors, as appropriate, significant issues that arise regarding accounting principles and financial statement presentations, including critical accounting policies and practices, alternative accounting policies available under GAAP related to material items discussed with management, the potential impact on the Company's financial statements of off-balance sheet structures and any other significant reporting issues and judgments, significant regulatory, legal and accounting initiatives or developments that may have a material impact on the Company's financial statements, compliance programs and policies if, in the judgment of the Committee, such review is necessary or appropriate.

[] INTERNAL CONTROLS. To confer with management and the Company's independent auditors, as appropriate, regarding the scope, adequacy and effectiveness of the Company's internal controls, including any significant deficiencies or material weaknesses in the design or operation of, and any material changes in, the Company's internal controls and any special audit steps adopted in light of any material control deficiencies; and to review with management and the independent auditors any fraud, whether or not material, that includes management or other employees with a significant role in such internal controls.

[] AUDITED FINANCIAL STATEMENT REVIEW. Upon completion of the audit, to review and discuss with the Company's independent auditors and management the Company's annual audited financial statements (including the related notes), the form of audit opinion to be issued by the independent auditors on the financial statements and the disclosure under "Management's Discussion and Analysis of Financial Condition and Results of Operations" to be included in the Company's annual report on Form 10-K before the Form 10-K is filed.

[] REQUIRED AUDIT DISCLOSURE AND AUDIT COMMITTEE REPORT. To recommend to the Board that the audited financial statements be included in the Company's annual report on Form 10-K; and to review the disclosures regarding the Company's independent auditors and other matters related to the Committee's activities to be included in the Company's filings with the Securities and Exchange Commission.

[] QUARTERLY RESULTS AND EARNINGS INFORMATION. To review and discuss with the Company's independent auditors and management the Company's quarterly financial statements and the disclosure under "Management's Discussion and Analysis of Financial Condition and Results of Operations" to be included in the Company's quarterly report on Form 10-Q before the Form 10-Q is filed.

[] EARNINGS INFORMATION. To review and discuss with management and the Company's independent auditors, as appropriate, (a) earnings press releases, (b) any press releases containing information relating to material financial developments, and (c) any financial information and earnings guidance provided to analysts and ratings agencies, in all cases including the type of information to be disclosed, the type of presentation to be made and the use of any pro forma or adjusted non-GAAP information.

[] RISK ASSESSMENT AND MANAGEMENT. To review and discuss with management and, as appropriate, the Company's independent auditors, the Company's guidelines and policies with respect to risk assessment and risk management, including the Company's major financial risk exposures and the steps taken by management to monitor and control these exposures; and to review and discuss with management insurance programs, including director and officer insurance, product liability insurance and general liability insurance (but excluding compensation and benefits-related insurance) if, in the judgment of the Committee, such review is necessary or appropriate.

[] LEGAL, REGULATORY AND ETHICAL COMPLIANCE. To monitor and administer, and to review with the Company's independent auditors the results of its review of management's efforts to monitor compliance with, the Company's Code of Business Conduct and Ethics, as amended from time to time; to review the Company's compliance with applicable laws and regulations and to oversee any other policies, procedures and programs designed to promote such compliance.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

86. Plaintiff brings this action derivatively in the right of and for the benefit of Unicycive to redress injuries suffered, and to be suffered, as a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, violations of federal law, waste of corporate assets, and other wrongful conduct as alleged herein.

87. Unicycive is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

88. Plaintiff is an owner of Unicycive stock and has been a continuous shareholder of Company stock at all relevant times.

89. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

**Demand is Futile**

90. Because of the facts set forth herein, Plaintiff has not made a demand on the Board to institute this action against the Individual Defendants. Such a demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

91. At the time this suit was filed, the Company Board is comprised of four (4) members including Defendants Gupta, Laumas, Aggarwal, and Kenkare-Mitra.

92. Plaintiff is required to show that a majority of the Director Defendants, i.e., two (2), cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

93. The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. For the reasons that follow, and for reasons detailed elsewhere in this complaint, Plaintiff has not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

94. Each of the Director Defendants face a likelihood of liability in this action because they caused and/or permitted the Company to make false and misleading statements and omissions concerning the information described herein. Because of their advisory, managerial, and directorial positions within the Company, the Director Defendants had knowledge of material, non-public information regarding the Company and were directly involved in the operations of the Company at the highest levels.

95. The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

96. Each of the Director Defendants, by virtue of their roles, were required to, among other things: (i) ensure that the Company complied with its legal and regulatory obligations and requirements; (ii) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time; (iii) remain informed as to how the Company conducted its operations, make reasonable inquiries, and take steps to correct any improper conditions or practices; and (iv) ensure the Company was operated in a diligent, honest, and prudent manner. Despite this, the Director Defendants failed to fulfil these duties by permitting the false and misleading statements to be made and not correcting those statements.

97. As trusted Company directors, the Director Defendants conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded their duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded their duties to protect corporate assets.

98. Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

99. Each of the Director Defendants reviewed, authorized, signed, and thus personally made and/or otherwise permitted the false statements to be disseminated directly to the public and

made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

100. The Director Defendants also each reviewed, approved, and otherwise solicited the 2024 Proxy Statement which contained the false and misleading half-truths in violation of 17 C.F.R. § 240.12b-20, as alleged supra. Due to the Director Defendants' materially false and misleading statements in the 2024 Proxy Statement, the Company's stockholders voted to approve the proposals in the 2024 Proxy Statement, including the re-election of the Director Defendants to the Board, thereby enabling them to continue breaching their fiduciary duties to the Company. As such, each of the Director Defendants face a substantial likelihood of liability for their role in preparing and soliciting the false and misleading 2024 Proxy Statement.

101. Further, upon the materially false and misleading statements in the 2024 Proxy Statement, Company shareholders voted in favor of re-electing the Director Defendants. Thus, the Director Defendants each received a material personal benefit from the materially false and misleading 2024 Proxy Statement in the form of their continued service on the Board and concomitant compensation and access to inside information. As such, demand is excused as to each of them.

102. Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

103. Despite having knowledge of the history of their own misconduct and mismanagement, the Director Defendants have failed to seek recovery for the Company for any of the misconduct alleged herein.

**Demand is Futile as to Defendant Gupta**

104. Defendant Gupta is neither disinterested nor independent and is thus incapable of considering a demand to sue because he (as its president and CEO) is an employee of the Company who derives substantially all of his income from his employment with the Company,

making him not independent. As such, Defendant Gupta cannot independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would expose him to liability and threaten his livelihood.

105. As CEO, Defendant Gupta also fails the stock exchange bright-line independence test and cannot, therefore, be considered independent, as admitted by the Company in its 2024 Proxy Statement. As such, Defendant Gupta could not objectively and disinterestedly consider a demand to sue the Individual Defendants and any demand upon Defendant Gupta is therefore futile.

106. Defendant Gupta also personally reviewed, signed, authorized, and/or made the false and misleading statements alleged herein during earnings calls, in SEC filings, press releases, and in other public forums. Thus, as a main perpetrator of the wrongdoing alleged herein, Defendant Gupta is irreconcilably conflicted, faces a substantial likelihood of liability, and cannot consider a demand to sue.

107. In addition, Defendant Gupta receives lucrative compensation in connection with his employment with the Company. Defendant Gupta is not independent from Defendants Sewell, Ward, and Sridhar as they comprise the Compensation Committee and are responsible for evaluating and determining the compensation of the CEO and Executive Officers, including Defendant Gupta. The purpose of the Compensation Committee is to assist the Board in discharging its responsibilities related to the compensation provided by the Company to its CEO and Executive Officers. Because of his status as an inside director, and the concomitant substantial compensation he receives, Defendant Gupta could not consider a demand adverse to the other Director Defendants serving on the Compensation Committee who are responsible for his financial future.

108. Because of Defendant Gupta's participation in the gross dereliction of fiduciary duties, and breaches of the duties of due care, good faith, and loyalty, Defendant Gupta is unable to comply with his fiduciary duties and prosecute this action. Defendant Gupta is in a position of

irreconcilable conflict of interest in terms of the prosecution of this action and defending himself in the Securities Class Action.

**Demand is Futile as to Defendants Laumas, Aggarwal and Kenkare-Mitra**

109. Defendants Laumas, Aggarwal, Kenkare-Mitra served as members of the Audit Committee. Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, inter alia, overseeing the accounting and financial reporting processes of the Company and the audits of the financial statements of the Company, and otherwise meet their responsibilities as set forth in the Audit Committee Charter as set forth herein

110. Defendants Laumas, Aggarwal and Kenkare-Mitra breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, inter alia, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise, failed to ensure that adequate internal controls were in place regarding the serious accounting and business reporting issues and deficiencies described above. Therefore, Defendants Laumas, Aggarwal and Kenkare-Mitra face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

**Additional Reasons Demand is Futile**

111. The Company has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Defendants have not caused the Company to take action to recover for the Company the damages it has suffered and will continue to suffer thereby.

112. The Company, at all material times, had its Code of Conduct and related corporate governance policies which required each of the Individual Defendants to maintain the highest standards of honesty and integrity, particularly in relation to accurate and truthful public disclosures. Yet, despite this Code of Conduct and other relevant policies and committee charters, each of the Director Defendants failed to ensure that the Company upheld high standards of integrity, misrepresented facts to the investing public, and failed to report any concerns, or investigate any misconduct, let alone commence litigation against the Individual Defendants.

113. In violation of the Code of Conduct, the Director Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to cause the Company to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, waste of corporate assets, and unjust enrichment. In violation of the Code of Conduct, the Director Defendants failed to comply with laws and regulations, failed to maintain the accuracy of company records, public reports, and communications, and failed to uphold the responsibilities related thereto. Thus, the Director Defendants face a substantial likelihood of liability and demand is futile as to them.

114. The Director Defendants received, and continue to receive, substantial salaries, bonuses, payments, benefits and other emoluments by virtue of their membership on the Board. They have benefitted from the wrongs alleged herein and have engaged therein to preserve their positions of control and the prerequisites thereof and are incapable of exercising independent objective judgment in deciding whether to bring this action.

115. The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

116. Publicly traded companies, such as Unicycive, typically carry director and officer liability insurance from which the Company could potentially recover some or all of its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that will foreclose a recovery from the insurers if the Individual Defendants sue each other to recover the Company's

damages. If no such insurance is carried, then the Director Defendants will not cause the Company to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event.

117. Accordingly, each of the Director Defendants, and at least a majority of them, cannot reasonably consider a demand with the requisite disinterestedness and independence. Indeed, any demand upon the Director Defendants is futile and, thus, excused.

**CLAIM I**

***Against the Individual Defendants for Violations of Section 14(a) of the Exchange Act***

118. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

119. Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

120. Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

121. The Director Defendants violated § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder by the SEC.

122. The Director Defendants, individually and in concert, disseminated and/or permitted the dissemination of materially false and misleading statements in the 2024 Proxy Statement filed with the SEC.

123. The 2024 Proxy Statement was used to solicit shareholder votes in connection with the re-election of the Director Defendants to the Board, among other things.

124. The 2024 Proxy Statement was materially false and misleading because it concealed from investors that: (i) Unicycive's readiness and ability to satisfy the FDA's manufacturing compliance requirements was overstated; (ii) the OLC NDA's regulatory prospects were likewise overstated; and (iii) as a result, the Company's and the Individual Defendants' public statements were materially false and misleading at all relevant times.

125. Further, the 2024 Proxy Statement was false and misleading when it discussed the Board's role in risk oversight because, despite representations to the contrary, the Board was not in fact fulfilling its oversight responsibilities. It was known, or should have been known, to the Director Defendants in the exercise of prudent business judgment that the Board was not exercising adequate risk oversight. As such, the foregoing statement in the 2024 Proxy Statement was a half-truth, meaning that the Director Defendants were required to (yet failed to) include all additional information necessary to make the statement not misleading. See 17 C.F.R. § 240.12b-20.

126. In the exercise of reasonable care, the Director Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2024 Proxy Statement were materially false and misleading.

127. The materially false and misleading statements contained in the 2024 Proxy Statement misleadingly induced shareholders to vote in favor of the election of the Director Defendants to the Board, thereby allowing them to continue breaching their fiduciary duties to the Company.

128. The Company was damaged as a result of the Director Defendants' material misrepresentations and omissions in the 2024 Proxy Statement.

**CLAIM II**

***Against the Individual Defendants for Breach of Fiduciary Duties***

129. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

130. Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Unicycive's business and affairs, particularly with respect to issues as fundamental as public disclosures.

131. Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

132. In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report the Company's overall business, operations, and prospects.

133. In breach of their fiduciary duties owed to Unicycive, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

134. The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Unicycive.

135. The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

136. The Individual Defendants failed to correct and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

137. These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

138. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Unicycive has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

139. Plaintiff, on behalf of Unicycive, has no adequate remedy at law.

**CLAIM III**

***Against the Individual Defendants for Unjust Enrichment***

140. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

141. By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Unicycive.

142. The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Unicycive that was tied to the performance or artificially inflated valuation of Unicycive, or received compensation or other payments that were unjust in light of the Individual Defendants' bad faith conduct. This includes lavish compensation, benefits, and other payments provided to the Individual Defendants who breached their fiduciary duties to the Company.

143. Plaintiff, as a shareholder and a representative of Unicycive, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, the redemption of preferred stock, benefits, and other compensation,

including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

144. Plaintiff, on behalf of Unicycive, has no adequate remedy at law.

**CLAIM IV**

***Against the Individual Defendants for Gross Mismanagement***

145. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

146. By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Unicycive in a manner consistent with the operations of a publicly held corporation.

147. As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Unicycive has sustained and will continue to sustain significant damages.

148. As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

149. Plaintiff, on behalf of Unicycive, has no adequate remedy at law.

**CLAIM V**

***Against the Individual Defendants for Waste of Corporate Assets***

150. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

151. The Individual Defendants caused the Company to pay the Individual Defendants excessive salaries and fees, to the detriment of the shareholders and the Company.

152. As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, the Individual Defendants have caused Unicycive to waste valuable corporate assets, to incur many millions of dollars of legal liability and/or costs to defend

unlawful actions, to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

153. 261. As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

154. Plaintiff, on behalf of Unicycive, has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A. Declaring that Plaintiff may maintain this derivative action on behalf of Unicycive and that Plaintiff is a proper and adequate representative of the Company;

B. Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Unicycive;

C. Against all of the Defendants and in favor of Unicycive for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

D. Directing Unicycive to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Unicycive and its shareholders from a continuation or repetition of the damaging events described herein;

E. Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

F. Awarding Unicycive restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants, including profits obtained by insider sales;

G. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

H. Granting such other and further equitable relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: November 7, 2025

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff Gina Henry*

# VERIFICATION

I, Gina Henry am a plaintiff in the within action. I have reviewed the allegations made in this shareholder derivative complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.

DATED: 11/4/2025

Signed by:

1E91F2FC481A4A3...

Gina Henry